We'll hear argument next in Case 23-3, Coinbase v. Suski. Ms. Ellsworth. Mr. Chief Justice, and may it please the Court, the Federal Arbitration Act requires courts to enforce arbitration agreements according to their terms. Respondents in Coinbase agreed to arbitrate any disputes about Coinbase services and to delegate to an arbitrator any threshold disputes about whether specific claims were subject to arbitration. Despite this delegation clause, the parties have spent nearly three years disputing this threshold issue. That's because instead of enforcing the delegation clause, the courts below came up with rationales to evade it and to instead answer the question of arbitrability for themselves. The Ninth Asserting that contract formation can never be delegated and sidestepping the delegation clause. The issue, as the Court of Appeals saw it, was whether the parties formed a contract to arbitrate these claims. If that approach were correct, courts in every case could ignore delegation clauses by just characterizing an arbitrability dispute as a question of whether the parties formed a contract to arbitrate the claims at issue. Respondents do not defend that reasoning. They agree the contracts here were formed and that they were in effect. Their argument is that the scope of the otherwise applicable arbitration agreement was narrowed by a later contract to exclude their asserted claims. That question is one of arbitrability and the parties agreed an arbitrator would decide it. Respondents blur three distinct legal questions in a case like this one. The first is the merits of the claims the respondents assert. The second is whether the merits of those claims should be arbitrated. And the third, which is the only question that was before the courts below and is before this Court, is who decides whether the merits should be arbitrated. This third question is antecedent to the other two. I welcome the Court's questions. Isn't the problem the confusion that results from the difference between the official rules and the agreement? So, Your Honor, at some level there is some confusion that the respondents have argued results from looking at these two together. But the only way there is confusion is if you conflate those different layers of questions, because the delegation clause that's in the who decides. What is the source of the disagreement here? Doesn't it come from the rules? So the source of the agreement is Disagreement. Certainly. The source of the disagreement is that there is a forum selection clause in the official rules that says something about controversies regarding the promotion. And the respondents have argued that by using that language, the second contract somehow carved out of the arbitration agreement the claims they want to assert here. Well, couldn't this have been solved in drafting by simply either having express arbitration provision in the official rules or by referring back to and incorporating the user agreement? So Your Honor, I think those are certainly questions that could be and should be addressed by the arbitrator when this gets there. But the threshold question is whether the confusion that Your Honor is referencing has anything to do with the who decides issue. And there's nothing in the official rules language. Well, I think it goes a little deeper because you can also say is there actually an arbitration agreement that comes out of the rules? So Your Honor, I don't think there is an arbitration agreement anywhere in the official rules. The respondent's argument is to try to take the official rules to create ambiguity about the or confusion, as Your Honor said, about what claims are actually subject to arbitration. But that is a garden variety arbitrability question. It doesn't speak to the threshold gateway who decides question. So can I ask you about the who decides question? Because I think I'm following your argument. But I guess I'm questioning whether you're right that the only way there's confusion is if you conflate the questions. So let me posit this hypothetical. Suppose we have two contracts, the first of which has a delegation clause that answers the who decides question. And the answer in the first contract is the arbitrator decides. We have a second contract that answers the delegation question. And the answer in that case is the court decides. In that situation where you have these two different contracts with two different clear delegation principles, isn't the question at that point which contract controls, which I take it is another way of the Ninth Circuit saying, well, this contract superseded that one. But really, it's a question at that point of what did the parties intend, what was their agreement about which of these two contracts controls the situation. And in that case, I think you go to the court. Why am I wrong about that? And isn't that the situation that's actually being presented on these facts? So I think you are right about that, not wrong about it. And I think the distinction between your hypothetical and this issue in this case is a very important one. You are right about it because in your hypothetical, you identified a contract with a delegation clause and a second contract that isn't silent about delegation. It specifically addresses delegation and has a different provision. So a party could come into court resisting arbitration and make a specific challenge to the delegation clause in the first contract that is directed at whether that particular delegation clause has been superseded by the later delegation clause. It's all at this who decides level. The problem in this case is that from the very beginning, the respondents have agreed this arbitration agreement remains in effect, this delegation clause remains in effect. It would cover these claims. I understand. But by operation of the law, don't we have basically the same thing here? Because the second contract is not completely silent. The second contract says forum selection, go to, you know, disputes go to the court. And I thought that by operation of law, when you don't speak to delegation in a situation like that, it's the choice is the delegation is to the court. So that in effect, even though we don't have those words in the second contract, we've basically achieved the same thing. Am I wrong about that? I think you are just a little bit off about that. And the nuance here I think is the exact nuance that this court identified really going all the way back to PrimaPaint, but through Renta Center itself, where it talked about the fact you can have validity challenges that occur at these different levels. So you can argue that there's some sort of invalidity or some sort of supersession that can also have one that occurs at the level of the delegation clause. And under the severability principle that this court has consistently applied and that it draws directly from the text of section two of the FAA, the only question here is whether the respondent's argument addresses the who decides question. Can I keep going? No, I'm sorry. So the only other point I would make that I think is important to understand about this is that a delegation clause by its very nature must reach more broadly than an arbitration agreement. And that's because when you get to the ‑‑ when you have the delegation and you end up in front of the arbitrator, sometimes the answer will be yes, this should be arbitrated. Sometimes it will be no, it shouldn't be. But the force of the delegation clause does not turn on the reach of the arbitration agreement. So from the reply brief, page nine, I located a point of possible agreement between you and respondent on a remand possibility. So you say on page nine in the reply brief, because the Ninth Circuit did not decide whether the sweepstakes official rules displaced the delegation clause, this court could vacate the judgment below and instruct the Ninth Circuit to apply the FAA's severability rules, see response 58, respond to the red brief. The red brief said the court should remand this case to the Ninth Circuit to more thoroughly consider whether the official rules partially modified the user agreements delegation clauses. They say under non‑preempted state laws of contract interpretation. Are you all saying the same thing there? And if you both agree that the Ninth Circuit's analysis is wrong and should be remanded, are we done? So I think, Your Honor, that we do both agree that the Ninth Circuit's analysis was wrong. I think we do both agree that this should be remanded. I think we have a disagreement when you get beyond that. The under. Can we just remand and say that's for the Ninth Circuit to figure out in the first instance? You can. I think it would be important. And if we do that, are we done? So, Your Honor, I think you could stop there. I think there are some reasons not to stop there. And to add a little bit of an explanation. But we could. I just want to get the could responded. Yes, Your Honor. Yes, I ‑‑ Then tell me why we shouldn't. But I just wanted to get the could. Okay. Well, I think you could stop there. But in saying that you're remanding the case, I think there are three important principles that the Ninth Circuit went astray on that I would recommend that this Court provide as guidance, because this is a situation ‑‑ successive contracts come up, not infrequently, in all sorts of commercial settings, consumer settings. The first is that the severability principle applies just as much in a successive contract scenario as it does to a single contract scenario. That means that the Court can only entertain challenges directly to the validity or enforceability of the delegation clause itself. The second principle that I think would be important to explain is that delegation clauses can and regularly do direct an arbitrator to resolve disputes about whether an arbitration agreement exists and whether it covers a particular dispute. The third point I think that this Court should make in remanding it is that a Court cannot refuse to enforce a delegation clause based on the Court's view that a later contract changes the scope of what disputes are arbitrable, because, as I said in response to your earlier question, the force of a delegation clause does not rise or fall on the scope of ‑‑ These are huge changes. I'm sorry. These are huge changes. You are now creating a whole set of Federal rules on what constitutes a superseding agreement or not. I don't ‑‑ we didn't grant cert on that. We granted cert on a very narrow question, and the narrow question was where parties enter into an arbitration agreement with a delegation clause, should an arbitrator or a Court decide whether that agreement is narrowed by a later contract that is silent as to arbitration and delegation? I don't know whether the silence or not is relevant. The question is what does State law do? We didn't answer ‑‑ we didn't ask for briefing on that. The short answer is the Court decides what State law says or doesn't say. Here the Ninth Circuit decided that three years into this litigation, two appeals to the Supreme Court that have been accepted. Why shouldn't we just answer that question? The Court decides it. State law may guide the Court in whether there's been a superseding agreement, but we shouldn't be creating Federal rules for the State to follow or not follow in interpreting contracts. Justice Sotomayor, we are not asking for you to create any Federal rules in resolving this case. The severability rule is something this Court has applied consistently. It has drawn directly from the text of Sections 2, 3, and 4. And all we're asking is that in remanding this, you make clear that the rule applies here just as it always does. MS. GOTTLIEB Well, I would suppose that your answer could be that it depends. I mean, simply because there's a subsequent contract that is silent doesn't mean that the delegation clause covers all of that, right? You could have a big enterprise and you have a delegation clause and a particular arbitration agreement, and there's a contract entered between the two. And you think in that situation it still goes to the arbitrator to decide whether he or she's been delegated the authority to arbitrate that agreement? MS. COTTLIEB Mr. Chief Justice, I think there is a practical answer to that and there is a doctrinal answer to that. The practical answer is that a party only invokes a delegation clause when it thinks it has a real claim that the dispute is actually subject to arbitration. So for example, in this case, the respondents have agreed that absent the official rules changing it, their claims are subject to arbitration. So that's the practical answer. JUSTICE SOTOMAYOR Well, put that aside. Well, or no, I'll answer it now. I mean, the parties invoke it or not depending upon how they regard their self-interest. I mean, they may well have a favorable view of the person who's arbitrating or not. They may well have a particular reason to proceed more promptly than litigation would. What is the internal limit that you have that says, no, that contract is not sufficiently connected to why we have a delegation clause under the other one? MS. COTTLIEB Your Honor, when a party invokes a delegation clause, this Court unanimously in the Henry Schein decision from a few terms ago made clear that courts have no power and no business answering the arbitrability question for themselves, even in a case where they think the invocation of the delegation clause was wholly groundless. We are a far cry from that scenario here. I think Your Honor's hypothetical where there are two contracts that really address totally disconnected scenarios might be closer to Henry Schein, but Henry Schein then I think provides the appropriate avenue. And as the Court said in that case, if someone really is frivolously or improperly invoking a delegation clause, arbitrators have ways to quickly move the matter back to court. There may be sanctions available.  JUSTICE SCALIA But at some point, you get into the fundamental principle of arbitration that the parties must have agreed to turn something over to the arbitrator. And it seems to me that if you get a contract that is way out of the, however you want to describe it, the scope, that saying it's up for the arbitrator kind of skips over that pretty important part. MS. COLEMAN Your Honor, in this case, there is undisputedly a clear and unmistakable delegation clause of all disputes about coin-based services. These claims are about coin-based services. The respondents say that they used coin-based services to enter into a sweepstakes when they wished they had mailed in a postcard instead. That is absolutely a dispute about arbitration. The question becomes, does the, do the official rules somehow carve out that particular set of claims from arbitration? But there's not a carve-out from delegation, and that makes sense because the purpose of delegation is to set up a streamlined, efficient process for resolving these arbitrability disputes. It is about consent, to have an arbitrator quickly and efficiently tell the parties, does this dispute belong in court or does this dispute belong in arbitration? JUSTICE ALITO On the pure, on the pure who question, which is what we agreed to review, you say on page 12 of your reply brief, coin-based agrees that the court can and should assess whether the official rules displace the party's consent to have an arbitrator decide arbitrability. I mean, that seems to answer and concede the who question. And then there is the what question, but we didn't grant review on the what question. MS. MCGURK Right. That's absolutely right, Justice Alito. You granted review on the, on the who, who decides question. JUSTICE ALITO Right. MS. MCGURK And the answer to the who decides question in a case like this, where there is a delegation clause that remains in effect, is absolutely that the arbitrator does. JUSTICE ALITO Well, you've, haven't you, you've, you've begged the question. When you say that remains in effect, the question is whether it remains in effect after the official rules. MS. MCGURK Your Honor, that's correct. And that is a – JUSTICE ALITO Who decides that? MS. MCGURK So if the parties came to court and made an argument that was specifically directed at the delegation clause somehow being undermined, this would require showing that your argument addresses the same level of concern as who decides. Again, if we think about you've got who decides, you've got arbitrability, and you have the merits. They pointed to a provision that talks about a court deciding controversies regarding the promotion. And I think that's why in the District Court, in the Court of Appeals, in this Court, the way respondents see to get to a delegation invalidation is to argue that the arbitration agreement has been narrowed, and there's been some corresponding narrowing  JUSTICE SOTOMAYOR Can we set aside the way they framed it? Because I agree it's a little confusing if you start from the world of we have a delegation agreement, then we have a subsequent agreement, and the question is to what extent the subsequent agreement is a carve-out or narrows or whatever. Let's say we don't frame it that way. Let's say we frame it in the way that I want to think about it, which is we have Contract A that absolutely answers the who decides question, and then we have Contract B that implicitly decides the who decides question, because I understood by operation of law, based on what the Chief Justice was saying, is that if you don't pick arbitration, if you're silent about it, then the background rule operating is that arbitration is not what happens, and any question about whether or not arbitration is what happens, the who decides, goes to the court. So we have Contract No. 1 that is picking, arbitrator is the one who decides, and we have Contract No. 2 that is implicitly picking, court is the one that decides. I thought you agreed with me at the beginning that in that situation, it's a question for the court, and that's what we're at. Which of these contracts is actually operable today? Justice Jackson, I think the difference between your earlier hypothetical, as I understood it, and this one, is that the second contract in your earlier hypothetical specifically said that the delegation clause, it identified that there wouldn't be a delegation, it would be on some sort of different terms. In this case, the second contract says nothing about delegation. Right, but do you disagree with me that by the operation of law, when a contract says nothing, the court is the one that decides what it means and what happens? In the abstract, if the only – No, not in the abstract, in the way we look at the law. If it doesn't say anything about arbitration – So if the contract didn't say anything about arbitration, we wouldn't be able to invoke it as part of a motion to compel arbitration. No, what you're doing is you're invoking Contract 1. So what I'm saying – That's right. He's invoking Contract 2. We have two people running in with contracts, one of which suggests that this is supposed to be decided by the court, the other suggests that this is supposed to be decided by the arbitrator. And so in that situation, isn't the question, which contract controls in this situation? So Justice Jackson, I think it's important to figure out what the correct starting point is, and I think one of the remaining places of daylight between the respondents and the petitioner here is what the right starting point is. We say the right starting point is the arbitration agreement that we seek to enforce, and here that is the delegation clause in the first contract. That delegation clause, under the straightforward operation of Section 2 of the FAA, remains valid, enforceable, and irrevocable unless they can make some state law challenge that would displace it. And so the question becomes – and this is the analysis the Ninth Circuit didn't do – have they, by pointing to the forum selection clause that talks about resolving controversies about the promotion, have they done anything under state law to displace the who-decides delegation clause in the first contract? Counsel, can I ask you just a practical question? I fully appreciate your argument that parties might send to the arbitrator the question of who decides, and at the same time have the merits decided in one place or the other, even within a single arbitration agreement. Arbitrator decides whether agreements go to court or arbitration. Some will, some won't. I get that. I guess I'm a little curious why your client is fighting this so hard if, at the end of the day, you're going to wind up saying, yeah, sweepstakes disputes go to court. So if the arbitrator is going to have to send it to court anyway, why are we here? So, Your Honor, that's the practical point that I tried to make in response to the Chief Justice. I think if we thought this was going to end up back in court, we wouldn't have invoked the delegation clause. I fully appreciate that, and I also appreciate that under Schein that an arbitrator could sanction you for a frivolous effort to keep this in arbitration. My question is more practical than that, even, and more nitty-gritty. Why in this case are you fighting it when you have this second agreement that would seem to rout, except maybe the arbitrator should have decided this? I'm spotting you there. So, Your Honor, the answer is because when we get to the arbitrator, we think we have very good reasons. I know that. What are they? I'm happy to talk you through a number of them. One is that this provision is in the contract. It applies to mail-in applicants who participate in the sweepstakes that way. The second is that the contract, the official rules speak about jurisdiction, and a motion to compel arbitration and an arbitration agreement are not about removing the jurisdiction of the court. It speaks to personal jurisdiction. Really, that's what paragraph 10 is about, and we don't think it operates as a carve-out on the arbitration agreement's scope in the way that the respondents have argued. So those are exactly the points that we would make to an arbitrator, and I think Henry Schein makes clear an arbitrator may agree, it may disagree with us, but the arbitrator gets to make that decision in the first instance. Counselor, can I just return to Justice Kavanaugh's point about what the common ground is here? So you agree that the question of whether there is a valid delegation clause is one for the court? The question of whether there is a, under the severability principle, yes. You agree that courts make that decision by clearing convincing evidence? I think courts make that, they make that decision, yes. Okay. And you agree that there's a dispute here about whether there is a delegation of the arbitrability question to the arbitrator? I'm sorry, we agree or disagree? I'm saying, I'm asking, do you agree with me that the dispute between you right now is about whether there is a delegation that will send, taking these two contracts together, send this dispute to arbitration on the arbitrability question? So I think we agree that there is a, I think both sides agree that there is a delegation clause and that as originally formulated, it would cover this dispute. The respondents say... Right, but we're looking at two, we're looking at two contracts, so you agree, let's finish this up very quickly, you agree that there's a dispute about whether there's a valid delegation clause that applies here to send it to the arbitrator? Uh, we, our position is that there is a valid delegation clause and it should be enforced. But there's, no, I'm sorry, maybe I was unclear, but the question is, do you agree that there, the question here is about the existence, the validity of a delegation clause? Absolutely, Your Honor. The validity of the delegation clause, I think, is reserved for a court to resolve, applying the severability principle, which limits the arguments that can be offered to undermine it. But you agree on those three questions? Yes. Thank you, Counsel. Justice Thomas? Justice Alito? Justice Alito? Justice Kavanaugh? Any change from when I said could remand? No. No change, Your Honor. Okay. Justice Barrett? Justice Jackson? Okay. Thank you, Counsel. Mr. Harris? Mr. Chief Justice, and may it please the Court. I'm going to abandon what I planned to talk about and try to answer Justice Gorsuch's question, why are they fighting this so hard? And that only occurred to me within the last week or so. And the answer is there's a strategic reason. They want the court, they don't care who decides arbitrability. All they care about is how arbitrability gets decided, because that's what goes to liability at the end of the day. And so the plan is we need the Supreme Court to overrule the Ninth Circuit's weird existence language. Why do they need that and that only? The reason is that existence language originated from the Goldman Sachs case that was cited in our Ninth Circuit opinion. The Goldman Sachs case was somewhat similar to this case in that there was a preexisting agreement to arbitrate, but then a subsequent more specific agreement to litigate. The Ninth Circuit was looking at that situation and thinking, shoot, we're bound to apply the old presumption in favor of arbitrability under federal law, but we know that as a matter of contract law, there was no real mutual intent to arbitrate this dispute under the most recent, most specific agreement. So they made up a new federal rule, oh, this is a formation dispute, this is an existence dispute, so that they could avoid the presumption in favor of arbitrability and do the right thing under state law. We've gone to great pains to argue that non-preempted state laws are what apply here, because at the end of the day, those are the only laws that are capable of accurately discerning the party's true intentions, no matter what type of contractual mess gets thrown in front of judges. It's impossible to make one federal rule, two federal rules, three federal rules that are going to accurately discern the party's contractual intentions in an infinite number of business situations. Traditional state law can do that, and we ask that the Court apply that here, and welcome to answer any questions. But why wouldn't a later agreement that modifies the earlier contract simply go to what the scope of the agreement is? So it goes to two scopes. It goes to the scope of the agreement to arbitrate the merits of the dispute, and in our position that we've tried to brief very heavily, is that it goes to the scope of the agreement to delegate this arbitrability dispute to the arbitrator. And our reason for doing that is that under Granite Rock, consent to arbitrate is dispute-specific. If that's true in the context of an arbitration agreement, it also has to be true in the context of a delegation agreement. But counsel, the arbitration agreement, you concede, is still operative, right? For disputes unrelated to the sweepstakes, absolutely. Well, and it says it applies to everything. All disputes about coin-based services, right? The answer has to be yes. It's isolated terms. That's what it says. That's what it says. Isolated terms, okay. And I guess my question for you is the inverse of the one I asked your friend on the other side. The point in Schein was, if you agree to say the arbitrator gets to direct things, if this were all in one contract, it's possible some things would be arbitrated, agree to arbitrate, and some things would be agreed to send to court. And if it were in one contract, there's no doubt that the arbitrator would decide which direction to route things, right? The only question is, does the second contract make this different than it being in a single contract? And I struggle to see why that would be the case. And I furthermore struggle to see why you would care. Because your real argument is that the agreement is to litigate this in court. And the routing, who's going to do the routing? Now we're at the Supreme Court of the United States, years have passed, we still don't know where this case is going to be. You could have had an answer from an arbitrator that you belong in court years ago. Why didn't you? Again, I just struggle to see on both sides why we're here. So to deal with the first part, with the Ninth Circuit and the user agreement, I just want to make clear that the Ninth Circuit didn't just rely on this existence language. After it sort of regurgitated that... I'm not asking about the Ninth Circuit because it seems to be both sides have disavowed the Ninth Circuit's opinion. I'm asking why you are here. Because you could have had an answer from an arbitrator, because I think your argument is really quite strong as to where this gets routed. Well, we've already won in court. We've already won arbitrability in court, and they haven't challenged that here. So the only way they resurrect the arbitrability dispute at all is by winning the delegation agreement. My question is, though, if you think you can win on where this goes, why didn't you just go to the arbitrator and get a quick answer? Why litigate it all the way to the Supreme Court of the United States? So, I mean, I guess I'd have to go back and think about why I did it in the trial court, why I did it in the Ninth Circuit. But here, so arbitrability, not delegation, arbitrability is finally resolved by the federal courts, unless this court sends that dispute back to an arbitrator or the Ninth Circuit sends it back. Right. That's why we're here. We're at the antecedent question. So I don't want them to have a second chance to win arbitrability. They've already lost it. Can I ask you about Justice Gorsuch's hypothetical about things being in one contract? Because I think it actually matters with respect to what's going on here. So if we had one contract that just had one delegation provision, and then later underneath it it had user agreement, sweepstakes or whatever, it didn't say anything, you would agree that that delegation clause would apply to the whole thing? I think that's the best reading of the user agreements in isolation. All right. But you're saying that, I guess, if we had one contract that had different parts and there was a delegation agreement that was in one part of it that went to the arbitrator and then in the other, it was pretty clear the parties were saying this is delegated to the court, you're saying that would be a contract formation, the court would have to decide which one of those parts, which one of those delegation intents was operable? It would definitely be a different question if the two types of terms were contained in a single agreement between the same two parties. Here we have two separate agreements, two separate economic transactions, two separate groups of contracting parties, and that changes the intent analysis under traditional rules of interpretation. The brief, you agree with Coinbase that the Ninth Circuit's opinion did not accurately reflect the parties' contractual disputes here, right, particularly the references to formation and existence? Only that part. Right. And then you say the court can correct the Ninth Circuit's reasonings, the court should remand, alternatively, the court should remand this case to the Ninth Circuit. I'm asking the same question I asked the other side. Can we correct the Ninth Circuit's reasoning as both sides agree it's wrong, and then send it back for determination of whether the sweepstakes displace the other contract, which could involve a debate about which law controls and all sorts of other things. So I only agree that the existence and formation part of the Ninth Circuit's analysis was wrong. I do not view that part of what they said as what controlled their analysis. So if you look carefully at their opinion, they have two headings, delegation clause and arbitration, or whatever the second heading was. But they have a heading for delegation clause. Under that, Coinbase had argued that, well, this is a dispute about the scope of the arbitration agreement, and therefore, that's the end of the analysis. It must go to the arbitrator. The Ninth Circuit said, wait a minute. We're going to actually ask whether that scope language was intended to apply to a future contract like this one that says court only, that has a different set of parties. So all that to say, they did directly address the delegation question before reaching arbitrability, and that's correct under Henry Schein. And they also, in addressing delegation, the question they answered is, is this delegation clause intended to be applicable to this arbitrability dispute? And that's one correct question to ask under Granite Rock, because arbitration is always dispute specific. We can't just label this an arbitrability dispute and move on. We can't do that, because it's also a forum dispute. It's also, in substance, a dispute about the official rules. We don't actually agree about the scope of the user agreements. We disagree about the scope of the official rules of the June 2021 sweepstakes. How is that not a controversy regarding the sweepstakes as to arbitrability? It's about the arbitrability of the sweepstakes, and that was intended for the court. Do you think that the Ninth Circuit decided whether the official rules supplant the original arbitration agreements delegation clause? No. And that's where I think they went wrong, if anywhere. So you think that this is not like, oh, they just forgot to put in a sentence. You think that they never addressed that question? Correct. They stopped at the question before it, which is, look, we don't even have to reach the court. We're just looking at the clause, the delegation clause, and we're looking at the arbitrability dispute and we're saying, we don't think this was meant to cover this. And that's an applicability decision that is delegation-specific. That's not preempted by the FAA. They haven't addressed it at all. They haven't addressed it under state law. They haven't addressed it under federal law. They just want to focus on this existence language so that they can go back down and say, hey, this existence rule no longer exists, and by the way, that was your excuse to apply state law. Now you have to apply the presumption in favor of arbitrability. I think you just gave away your case. Well, no, Your Honor. They came in saying vacate and remand because they didn't address delegation and whether the user agreement, the sweep states agreement, superseded that. And you're saying the Ninth Circuit didn't do that. Right. And in my view, they didn't necessarily have to because they asked whether the delegation clause was applicable to this arbitrability dispute about the sweep states. They looked at the delegation clause and they said, this wasn't intended to cover this particular arbitrability dispute. And so they said, it's not delegated. But to some of the justices' point, if we look at just the language of the delegation clause, it's broad enough to cover any arbitrability dispute. So the safer, better way to address this delegation question is, were the official rules intended or did the official rules have the effect of modifying the delegation clause as to these types of arbitrability disputes? I just, I'm struggling. I certainly see the argument that the second agreement modifies where this thing should go and should be resolved and by whom ultimately. But I think you've just conceded over and over again that the first agreement says those questions go to the arbitrator and it's broad in scope and it covers everything, all relationships with Coinbase. So you want us to vacate and remand for more proceedings in the Ninth Circuit on whether that first agreement modifies the second, rather than just going to get an answer from the arbitrator. I mean, remand is not our first request. Our first request is to affirm the judgment and just make clear that that existence language isn't the way to go about it. The way to go about it is ask whether the parties intended the delegation clause to apply to this arbitrability dispute. And as, I mean, I could give you a long economic, strategic answer. I'm kind of curious, I admit. I mean, this is about a sweepstakes, you know, entry and how much money is at stake and why are we litigating all the way to the Supreme Court, United States, up and down and up and down over where this goes when, frankly, I would have thought you had a really good shot of getting an arbitrator to say this belongs in court. I would agree. But that wasn't the decision. We don't want to take this to an arbitrator. And they don't care where it goes. We care where it goes. But they don't care where the, they don't care who decides arbitrability. They just care where the case ends up. We've already won the issue in court of where the case ends up. So we don't want it to go to an arbitrator now to review the Ninth Circuit's arbitrability decision. I'm just answering the question of why are we here. I mean, because you think an arbitrator will be less likely to send it to court. Is that the reason why you're here? Well, what we have right now is 100% certainty. And if an arbitrator is reviewing it, it's less than 100% certainty. How much money are you seeking in your complaint for this sweepstakes entry thing? So, I mean, at the time we filed, we didn't know. At the time we filed, all we knew is that entrants were manipulated into being, into paying $100 per person or more to enter the sweepstakes. We are left to estimate, you know, how many people were affected by that. It's a class action. Putative, right? Putative. Yeah. That's, that's the answer, isn't it? Yes, Your Honor, that's essentially the answer. Counsel, if you have, Justice Thomas, do you want to add anything further? Thank you, Counsel. Thank you, Your Honor. Ms. Ellsworth? I think as Justice Sotomayor's question made clear, this case needs to be remanded. The respondents and the petitioners are in agreement on that. We're here because the Ninth Circuit failed to apply the FAA's federal severability framework and as a result, failed to do the state law analysis as applied to the delegation clause that it was required to do. The Ninth Circuit never asked whether the later contract specifically overrode the delegation clause under ordinary state law principles. And Justice Jackson, I think some of your questions were getting at how a delegation clause could actually be overridden in a later contract and I just want to respond to that briefly because I think it could be expressed as it was in one of your hypotheticals. It could, a later contract could wipe out arbitration entirely from the party's business relationship and then someone could come into court and say that that has, under state law there could be a merger agreement, a merger clause. There are a number of ways in which it could happen. The fact is that none of them happened here. Everyone agrees the Ninth Circuit didn't decide if the second contract displaced the delegation clause and instead just made a ruling on arbitrability. As I think my friend's argument shows and it's important for this court on remand to make clear, lower courts cannot collapse the who decides question and the section 2 analysis for a delegation clause with the later arbitrability question. Justice Gorsuch, in response to your question about what an arbitrator would say here, one other thing to note is that the only Ninth Circuit case on point specifically finds that a forum selection clause does not displace a delegation clause. That's the Mohammed case. It's one of the many reasons that we think these operate on different levels. Just like in the Prima Paint case where fraud and the inducement could operate differently at the level of the contract and at the level of the arbitration agreement, in Rent-a-Center where unconscionability could apply differently at the contract level, the arbitration agreement level and the delegation clause level, so too here, the forum selection clause could apply differently and it's important that the court address it at the specific who decides layer. For all of these reasons, we think the court should reverse in remand. Thank you. Thank you, counsel.